UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY MARTINEZ REINOZA (A# 240-910-304),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br><br>Respondent. | No. 1:26-cv-06245 DAD SCR<br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee proceeding through counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## FACTUAL AND PROCEDURAL HISTORY

### I. Factual Background

The record shows that Petitioner, a citizen and nation of Venezuela, entered the United States without inspection on June 15, 2022, but was arrested by Department of Homeland Security ("DHS") officers shortly thereafter. See ECF No. 8-1. On December 21, 2022, DHS released Petitioner on his own recognizance. ECF Nos. 8-1, 8-2. Following his release, Mr. Martinez Reinozo timely filed his application for asylum, applied for (and received) an employment authorization document, applied for (and received) temporary protected status, and

began working to support his wife and autistic child. Id.

On October 3, 2025, local enforcement arrested Petitioner for assault with a deadly weapon under California Penal Code § 245(a). ECF Nos. 8-1 and 8-8. Petitioner was additionally charged with inflicting great bodily injury within the meaning of California Penal Code §§ 12022.7(a). ECF No. 11-2. Petitioner is defending against that charge, which remains pending. Id. On July 18, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner outside on his home. ECF Nos. 8-1 and 8-9. Petitioner remains detained in the California City Immigration Processing Center, within this judicial district.

**II. Procedural History**

Petitioner initiated this action by filing a pro se petition on August 6, 2026. ECF No. 1. In the answer to the petition, Respondents assert that that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act ("LRA"), on account of his October 2025 arrest. ECF No. 6 at 1-2. They further argue that the petition is subject to dismissal for failure to exhaust administrative remedies through a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). Id. at 3.

After Respondent answered the petition, Petitioner, now proceeding with counsel, timely filed a first amended petition ("FAP"), ECF No. 8. See Fed. R. Civ. 15(a)(1)(B). The FAP challenges, *inter alia*, Petitioner's arbitrary re-arrest and continued detention under the substantive and procedural components of the Fifth Amendment Due Process Clause. ECF No. 8 at 10-12. Petitioner seeks release and an injunction prohibiting his re-detention absent a pre-deprivation hearing at which the government must establish, by clear and convincing evidence, that Petitioner presents a risk of danger or flight. Id. at 15. Petitioner adds that he would suffer irreparable harm if unable to secure immediate judicial consideration of his claims. Id. at 8.

Respondents oppose the FAP for the same reasons articulated in their answer to the original petition. ECF No. 11. In the alternative, Respondents claim that Petitioner is lawfully detained under § 1226(a) and that the only recourse available is a bond hearing at his request, not release from detention. Id. at 4.

////

After Respondents answered the petition, Petitioner, through counsel, filed a motion for temporary restraining order ("TRO"). ECF No. 12. Petitioner asserts that he is likely to succeed on his substantive due process claim given his detention "detention is both punitive and not justified by a legitimate purpose[.]" ECF No. at 12-3 at 10. Petitioner further argues that his re-arrest without pre-deprivation hearing violated procedural due process. Id. at 12-16. Respondents oppose the TRO motion for the reasons articulated in their answers, namely that Petitioner is lawfully subject to mandatory detention under 8 U.S.C.§ 1226(c)(1)(E), as amended by the LRA. ECF No. 15.

In his counseled traverse, Petitioner argues that Respondents waived and thus conceded his substantive and procedural due process claims. ECF No. 16 at 3-4. Addressing Respondents' mandatory detention arguments, Petitioner claims that the LRA is unconstitutional to the extent it "mandates detention without a hearing for individuals arrested for conduct (without a conviction)." Id. at 6-7. Finally, relying on the California Supreme Court's decision in In re Cabrera, 14 Cal. 5th 476 (2023), Petitioner argues that the charge enhancement under California Penal Code § 12022.7 for "great bodily injury" is not the equivalent to the "serious bodily injury" requirement under 8 U.S.C. §1226(c)(1)(E) because the two terms have different meanings under California law. Id. at 9.

## LEGAL STANDARDS

### I. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of

substantive due process, governmental action may only permissibly infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## DISCUSSION

### I. Petitioner is Not Required to Exhaust Administrative Remedies

Before considering the potential application of the LRA, the undersigned considers the Parties' exhaustion arguments. "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011)). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial

review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). "If a petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies,'" unless exhaustion is excused. Hernandez, 872 F.3d at 988 (citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

Generally, principles of prudential exhaustion require a noncitizen to pursue a Joseph hearing before raising § 1226(c) objections in habeas. See Buckley v. Chestnut, et al., No. 1:26-cv-02624-DAD-JDP, 2026 WL 1030931, at * 2-4 (E.D. Cal. Apr. 16, 2026) (declining to waive prudential exhaustion requirements because petitioner's appeal of his Joseph hearing was pending). At a Joseph hearing, "[d]etainees who deny that they satisfy any § 1226(c) predicate may challenge their mandatory detention[.]" Nielsen v. Preap, 586 U.S. 392, 418 (2019).

However, the undersigned agrees with Petitioner that he will suffer irreparable harm if judicial review delayed. See Laing, 370 F.3d at 1000. As the discussion below shows, this case presents a taxing and technical LRA analysis that will likely prolong administrative review and, by extension, Petitioner's allegedly unlawful detention. Moreover, exhaustion is futile because immigration courts lack jurisdiction over the FAP's core substantive and procedural due process claims. Zhiu v. Warden, California City Immigration Processing Center, No. 1:26-CV-06527-DAD-CSK (HC), 2026 WL 2445606, at *1 (E.D. Cal. Aug. 20, 2026) (waiving Joseph hearing requirement where the petitioner "raised a procedural due process claim challenging his re-detention and constitutional challenges cannot be resolved by the immigration court"); Gutierrez Romo v. Chestnut, No. 1:26-CV-03449 KES FJS (HC), 2026 WL 2254385, at *4 n.4 (E.D. Cal. Aug. 4, 2026) (waiving exhaustion for a petitioner who had not requested a Joseph hearing before filing § 2241 petition on substantive and procedural due process grounds); see also Gagik T. v. Chestnut, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026)

("When, as here, the [ ] claim is a constitutional one beyond the agency's competence to resolve, [ ] prudential exhaustion [ ] does not bar review."). Accordingly, waiver of the prudent exhaustion requirement is warranted here.

**II. Applicable Detention Statute**

The Parties' dispute is whether Petitioner is subject to mandatory detention under § 1226(c)(1)(E), as amended by the LRA. Congress enacted the LRA in January 2025, expanding mandatory detention to include anyone who (1) is inadmissible pursuant to paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a); and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" See Pub. L. No. 119–1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)(1)(E)). The LRA's first statutory condition is met because DHS administratively charged Petitioner as inadmissible under §§ 1182(a)(6)(A)(i) (noncitizen present without admission or parole). ECF No. 11-1 at 2 (Form I-213).

The second statutory condition turns on whether Petitioner was arrested for a "crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii). The LRA's term "serious bodily injury" has the meaning given such terms in the jurisdiction where the act occurred. 8 U.S.C. § 1226(c)(2). California defines the term as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." Cal. Penal Code § 243(f)(4).

According to Petitioner's FBI "Rap Sheet," Petitioner is charged with assault with a deadly weapon under California Penal Code § 245(a)(4). ECF No. 11-6 at 5. The undersigned agrees with Petitioner that this offense, which involves "force *likely* to produce great bodily injury," does not per se constitute a crime that "that *results* in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added).

The applicability of the LRA to Petitioner then hinges on whether his "great bodily injury" charging enhancement satisfies the second statutory condition:

> Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years.

Cal. Penal Code § 12022.7(a). Unlike the definition of "serious bodily injury," which includes a non-exhaustive list of injuries, the statute defines "great bodily injury" in more general terms as "a significant or substantial physical injury." Cal. Penal Code § 12022.7(f).

As Respondent notes, a California Court of Appeal has held that "'serious bodily injury,' as used in section 243, is 'essentially equivalent' to 'great bodily injury,' as used . . . in the section 12022.7 enhancement for the infliction of such injury on a person during the commission of a felony." People v. Wade, 204 Cal. App. 4th 1142, 1149 (Cal. Ct. App. 2012) (citing People v. Burroughs, 35 Cal.3d 824, 831 (Cal. 1984), overruled on another ground in People v. Blakeley, 23 Cal.4th 82, 89 (Cal. 2000)). In an earlier case, another California Court of Appeal similarly held that "[t]he terms 'serious bodily injury' and 'great bodily injury' have substantially the same meaning." People v. Hawkins, 15 Cal. App. 4th 1373, 1375 (Cal. Ct. App. 1993).

Both parties point to the California Supreme Court's more recent decision in In re Cabrera, 14 Cal.5th 476 (Cal. 2023), where the Court clarified that a jury's finding of "serious bodily injury" is not equivalent to a finding of "great bodily injury." The defendant was charged with battery with "serious bodily injury" in violation of California Penal Code § 243, as well a "serious felony" enhancement triggered by the commission of a prior felony in which the defendant "personally inflicts great bodily injury on any person[.]" Cabrera, 14 Cal.5th at 480-481 (quoting Cal. Penal Code § 1192.7(c)(8)). The jury found the defendant guilty on the battery charge, but deadlocked on the great bodily injury enhancement. Id. at 482. At sentencing, the prosecutor relied in part on the jury's serious bodily injury finding to assert the defendant had committed great bodily injury for purposes of the felony enhancement. The judge concluded the battery conviction was a serious felony because "'there is great bodily injury.'" Id.

The California Supreme Court determined that the judge's finding of "great bodily injury" for purposes of a felony enhancement usurped the jury's role as defined by the U.S. Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000). But as relevant here, the Court clarified

that "two terms are not equivalent as a matter of law," and "confirm[ed] that great bodily injury does not establish serious bodily injury[.]" Cabrera, 14 Cal.5th at 485; see also id. at 487 ("[A] jury could reasonably apply the statutory definitions of great bodily injury and serious bodily injury and find that an injury was serious but not great bodily injury."). The Court further rejected the Attorney General's argument that both great bodily injury and serious bodily injury "require the same threshold severity of injury," i.e., that they "describe levels of physical injury that are virtually identical." Id. at 485.

As relevant to the LRA inquiry, Cabrera stands for the proposition that "great bodily injury" is not necessarily sufficient to demonstrate "serious bodily injury" under California state law. "[F]ederal courts are bound by the pronouncements of the state's highest court on applicable state law." Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017) (quoting Ticknor v. Choice Hotels, Inc., 265 F.3d 931, 939 (9th Cir. 2001)). Therefore, Petitioner's great bodily injury charge does not enhance his charge under § 245(a) into a "crime that results in death or serious bodily injury to another person" under 8 U.S.C. § 1226(c)(1)(E)(ii).

Respondent counters that even if the two terms have different legal definitions, "great bodily injury is more aggravated." ECF No. 11 at 2 (citing Cal. Criminal Trial Manual, "PC 243(d) (Battery w/ Serious Bodily Injury)," https://crimtrial.com/statute/pc-243d-battery-w-serious-bodily-injury/). The undersigned finds no support for that argument in the cited trial manual, and finds persuasive the holding of a California Court of Appeal that has rejected such a reading of Cabrera:

> At most, Cabrera establishes the unremarkable proposition that the terms "great bodily injury" and "serious bodily injury" have different definitions under the law, and those distinctions may matter to a jury's factfinding. . . . In many cases, injuries that are serious will also be great, and injuries that are great will also be serious. However, Cabrera establishes that the differing definitions of these terms involve different elements that may matter in close cases. Cabrera does not, as City contends, establish that either great bodily injury or serious bodily injury involves an injury that is more severe, or that either statutory definition is broader than the other.

City of Fresno v. Superior Ct., 119 Cal. App. 5th 418, 441-42 (Cal. Ct. App. 2026), review denied (June 10, 2026).

////

At least one published state court decision notes that Cabrera discussed but did not overrule appellate court ruling that the two terms are "essentially equivalent" as evidence that its holding is limited to the Apprendi and Sixth Amendment context. See People v. Santistevan, --- Cal.Rptr.3d ----, No. B345055, 2026 WL 2526590, at *3 (Cal. Ct. App. Aug. 27, 2026) ("Although Cabrera holds that 'great bodily injury' and 'serious bodily injury' are not identical for purposes of Apprendi analysis, Cabrera nevertheless reaffirmed that the two terms are 'essentially equivalent' and discussed—but did not overrule—Hawkins."). But such a narrow reading ignores Cabrera's overarching rejection of the two terms as legal equivalents. See Cabrera, 14 Cal. 5th at 485 ("Our conclusion that serious bodily injury and great bodily injury are not interchangeable in the context of the jury instructions . . . shows that the two terms are not equivalent as a matter of law."). Regardless, it is precisely because Cabrera distinguishes between great bodily injury and serious bodily injury for Apprendi and Sixth Amendment purposes that the former is not necessarily equivalent to the latter when it comes to their "essential elements." See 8 U.S.C. § 1226(c)(1)(E)(ii); M.V.F. v. Santacruz, No.: 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *8 (C.D. Cal. Dec. 19, 2025) (following the "'categorical approach' commonly applied to other provisions of the Immigration and Nationality Act" to interpret the LRA and "find[ing] that Petitioner's arrest did not implicate the Laken Riley Act, as the charged (and now dismissed) crime did not constitute the essential elements of any crime that could result in serious bodily injury to another"); Rivera v. Lynch, 816 F.3d 1064, 1071 (9th Cir. 2016) ("[U]nder the categorical approach, we must first interpret the statute of conviction to identify its essential elements."). Moreover, even if the Court were to go beyond the "essential elements" analysis above to determine whether the incident in question in fact "result[ed]" in serious bodily injury, the record sheds no light on the facts underlying Petitioner's assault charge.

Accordingly, Petitioner is not subject to mandatory detention under § 1226(c)(1)(E) and is instead detained pursuant to the discretionary detention scheme at § 1226(a). Because § 1226(c)(1)(E) does not apply, the undersigned need not address Petitioner's arguments that the LRA is unconstitutional as applied to him.

////

### III. Due Process Analysis

In light of the Court's finding that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), and consistent with the Court's reasoning and rulings in substantively identical cases, the undersigned finds that Petitioner's Fifth Amendment right to procedural due process was violated by his re-detention without a pre-deprivation hearing. See Guaura v. Warden, 26-cv-01124-DAD-AC (HC), 2026 WL 895694 (E.D Cal. Apr. 1, 2026) (applying Cajina v. Wofford, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083 (E.D. Cal. Nov. 21, 2025), to grant petition and order immediate release on habeas petitioner's procedural due process claim); Lopez v. Albarran, No. 1:25-CV-01890-DAD-SCR (HC), 2025 WL 3691082 (E.D. Cal. Dec. 19, 2025) (same outcome as to a request for a temporary restraining order, relying on Perez v. Albarran, No. 1:25-CV-01540-DAD-CSK (HC), 2025 WL 3187578 (E.D. Cal. Nov. 14, 2025)); Abreu-Guerrero v. Chestnut, No. 1:26-CV-06959-DAD-SCR, 2026 WL 2664618, at *4 (E.D. Cal. Sept. 10, 2026) (concluding petitioner's re-arrest without pre-deprivation hearing violated procedural due process after determining he was not subject to LRA) (citing Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025).

Accordingly, consistent with these same authorities, the undersigned recommends that the FAP be granted and Respondents be ordered to immediately release Petitioner and be prevented from de-detaining him without specific constitutional protections.[1] Abreu-Guerrero, 2026 WL 2664618, at *4 (granting immediate release and an injunction that he may not be re-detained absent notice and a pre-detention hearing before an immigration judge); Ramos v. Warden, California City Corr. Ctr., No. 26-CV-01026-DAD-JDP, 2026 WL 836368, at *2 (E.D. Cal. Mar. 26, 2026) ("[T]he appropriate remedy is petitioner's immediate release where, as here, respondents have failed to provide authority for petitioner's detention.").

---

[1] The fact that Respondents denied Petitioner his procedural rights under 8 U.S.C. § 1226(a) for a period of months constitutes a separate procedural due process violation warranting release. See Feng v. Lyons, No. 1:26-cv-0235 DJC SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (finding that the "provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right").

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's first amended petition for writ of habeas corpus (ECF No. 8) be GRANTED on Count Two (procedural due process).[2]

2. Respondent be ordered to immediately release Petitioner GREGORY MARTINEZ REINOZA (A# 240-910-304) from their custody and to return all of Petitioner's documents and possessions at the time of release.

3. Respondent be directed to file a notice certifying compliance with the above provisions within three (3) days from the date of any final order requiring release.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

5. Petitioner's TRO motion be DENIED as moot.

6. The final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7. The Clerk is directed to serve the California City Immigration Processing Center with a copy of this Order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

[2] In the interests of judicial economy, any remaining claims in the FAP are not addressed herein.

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 21, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE